UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| DAVID LALIBERTE,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN DOE 1, acting in his individual capacity as a Minneapolis Police Officer, JOHN DOES 2-6, acting in their individual capacities as Minneapolis Police Officers, JOHN DOES 7 and 8, acting in their individual and official capacities as supervisory Minneapolis Police Officers, MEDARIA ARRADONDO, acting in his individual and official capacity as the Minneapolis Chief of Police, and the CITY OF MINNEAPOLIS,<br><br>    Defendants. | Case No._____<br><br>**COMPLAINT**<br>**Jury Trial Demanded Under FRCP 38(b)** |

For his Complaint, DAVID LALIBERTE, states and alleges as follows:

1. This action seeks money damages as compensation for the Defendants' violation of Plaintiff's civil rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution.

2. LALIBERTE sustained injuries as the result of the use of deadly force on May 27, 2020, in addition to other violations of his constitutional rights, by defendants JOHN DOES 1-6— Minneapolis Police Officers. The conduct of these Defendants violated LALIBERTE's clearly established federal civil rights, all while acting under the color of state law.

3. LALIBERTE also asserts claims against JOHN DOES 7-8 and MEDARIA ARRADONDO with regard to their roles as trainers, supervisors, and policymakers.

4.       LALIBERTE additionally asserts claims against the City of Minneapolis under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

5.       These causes of action arise solely from 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution. State-law limitations and defenses are not applicable to this civil- rights lawsuit.

## PARTIES

6.       LALIBERTE is, and was at all times material herein, a citizen of the Unites States and a resident of the State of Minnesota.

7.       Defendants JOHN DOES 1-6, upon information and belief, were at all times material herein citizens of the United States, residents of the State of Minnesota, and duly appointed and acting as officers of the Minneapolis Police Department. They are sued in their individual capacities.

8.       Defendants JOHN DOES 7 and 8, upon information and belief, were at all times material herein citizens of the United States, residents of the State of Minnesota, and duly appointed and acting as supervisory officers of the Minneapolis Police Department. They are sued in their individual and official capacities.

9.       Defendant MEDARIA ARRADONDO was at all times material herein the Chief of the Minneapolis Police Department and a policymaker for the Minneapolis Police Department. He is sued in his individual and official capacities.

10.      Defendant City of Minneapolis is a municipality duly incorporated under the laws of the State of Minnesota.

## JURISDICTION AND VENUE

11. LALIBERTE brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, the First, Fourth, and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343(a)(3). These statutory and constitutional provisions confer original jurisdiction of the Court over this matter.

12. The events giving rise to this action occurred in the City of Minneapolis. Venue is thus proper under 28 U.S.C. § 1391(6)(2).

## BACKGROUND

13. On May 25, 2020, George Floyd was killed by former Minneapolis Police Officer Derek Chauvin while three fellow officers stood by and refused to intervene. Video of the murder led to worldwide outrage and many protests ensued as a call to address systemic racism in our nation's police departments.

14. In the days that followed, thousands of Minneapolis residents took to the streets to protest the unjustified killing of George Floyd as well as the inhumane treatment of people of color by the Minneapolis Police Department.

15. Although the vast majority of protests were peaceful, the Minneapolis Police Department employed heavy-handed tactics. The protests—peaceful or not—were met with great force by the Minneapolis Police Department, including the improper use of tear gas and other supposedly "less lethal" munitions.

16. On May 26, 2020, Minneapolis Councilmember Andrew Johnson denounced the police use of chemicals and projectiles, stating: "What I saw from some of the scenes last night looked to be disproportionate and escalating force . . . . It's extremely concerning, and we need answers and accountability for that."

17. That same day in widely publicized incidents, members of the Minneapolis Police Department shot tear gas and other projectiles at demonstrators during protests in Minneapolis.

18. On May 27, 2020, Minneapolis Mayor Jacob Frey told residents that he understood their anger and he encouraged peaceful protests: "What we need now in terms of protesting is peaceful protesting . . . . No one out there will fight harder for their right (to protest) . . . . But those rights stop at a line when public safety is at risk and we need to be making sure that we're looking out for the safety of our residents."

19. On the evening of May 27, 2020, LALIBERTE rode his bicycle home from work.

20. LALIBERTE stopped to observe when he noticed individuals peacefully protesting outside of the Third Precinct.

21. The City of Minneapolis responded by shooting LALIBERTE in the face with a tear gas canister, or other projectile, causing him permanent injury.

22. LALIBERTE was yet another victim of the City of Minneapolis's severe and pervasive history of police misconduct and unchecked excessive force.

23. The entire group being observed by LALIBERTE was peaceful.

24. No warnings were given before defendant JOHN DOE 1 fired upon LALIBERTE.

25. LALIBERTE had not committed any crime and was never charged with any crime.

26. LALIBERTE had not displayed any aggression.

27. LALIBERTE was unarmed.

28. LALIBERTE posed no threat to the officers or others.

29. The scene was not chaotic.

30. The scene did not contain rioters or looters.

31. No directions were given to LALIBERTE.

32. No commands were given to LALIBERTE.

33. Defendant JOHN DOE 1 fired the tear gas canister in a manner contrary to the manufacturers' warnings and in contravention of Minneapolis Police Department training and written policies on the use of force.

34. No one from the Minneapolis Police Department offered to render aid to LALIBERTE.

35. The impact caused LALIBERTE to sustain a broken nose, broken cheek bone, the displacement of multiple teeth, and lacerations on his cheeks and lips along with other significant physical and mental anguish.

36. MPD Policy 5-313(A)(2), states as follows:

Chemical agents, regardless of canister size, shall only be used against subjects under the following circumstances:

   a) On subjects who are exhibiting Active Aggression,3 or;

   b) For life saving purposes, or;

   c) On subjects who are exhibiting active resistance in order to gain control of a subject and if lesser attempts at control have been or would likely be ineffective, or;

   d) During crowd control situations only when authorized in accordance with P&P 5-312 Force During Civil Disturbances.

37. None of the permissible uses of the chemical agent in Policies 5-312 or 5-313(A)(2) applied to LALIBERTE.

38. The applicable manufacturer guidelines, as well as MPD training and policies, mandate that the launcher never be aimed toward the neck or head of the target because engaging such regions of the body may result in permanent injury and/or death to the target.

39. Defendant JOHN DOE 1 utilized deadly force when no such force was authorized.

40. The failure to report, or to accurately report, the use of deadly force by Minneapolis Police Department officers occurred repeatedly in the days following George Floyd's death at the hands of Minneapolis Police Department.

41. The central tenet of the Minneapolis Police Department's Policies and Procedures is to enable the Minneapolis Police Department, the involved citizens, and the public to learn:

- What acts each Minneapolis Police Department officer took
- What use of force was employed
- What weaponry was used and in what fashion
- If any Minneapolis Police Department officer injured any individuals
- If and what aid was rendered by any MPD officer

42. There has been no such transparency with regard to LALIBERTE's incident, in an effort to prevent accountability.

43. Defendants JOHN DOES 1-6 failed to comply with Policy 5-313(B)'s requirements for the treatment and aid for chemical agent exposure.

44. Additionally, upon information and belief, defendants JOHN DOES 1-6 either failed to follow Minneapolis Police Department policies with regard to report writing and supervisor notification or falsified reports, utilizing systematic buzz words and phrases in an attempt to conceal the unauthorized use of deadly force on LALIBERTE.

45. Defendant JOHN DOE 1's unauthorized use of deadly force caused injury to LALIBERTE and therefore, under Policy 5-306, defendant JOHN DOE 1 was required to document the use of force in a CAPRS Report entitled "FORCE" and notify a supervisor.

46. Additionally, defendant JOHN DOE 1 was to remain on the scene during said required notification of the supervisor.

47. The "FORCE" CAPRS report was to be "completed as soon as practical, but no later than the end of that shift."

48. Further, Policy 5-306 required detailed supplements describing the use of force incident to be completed.

49. A short public narrative statement describing the offense or incident was not completed for LALIBERTE as required by Policy 4-602(A).

50. If the applicable Minneapolis Police Department policies outlined above had been followed, the following information would be readily available:

- A description of the scene and events leading up defendant JOHN DOE 1 pulling the trigger
- The identity of shooter
- The identities of witness officers
- The identities of lay witnesses at the scene
- The treatment and aid rendered by Minneapolis Police Department officers (if any)
- A description of the injuries LALIBERTE suffered
- Identification of the launcher used and projectile deployed by the shooter

51. But rank-and-file Minneapolis Police Department officers have felt free to flagrantly violate subjects' constitutional rights under department-wide reporting methods to cover up their misconduct.

52. Despite policies stating otherwise (see MPD Policy 5-105—requiring officers to "immediately report any violation of rules, regulations or laws that come to their attention, including force-related misconduct"), candor with regard to fellow officers' obvious constitutional violations is nonexistent at the Minneapolis Police Department.

53. Instead, rank-and-file Minneapolis Police Department officers have helped said unconstitutional actors to hide behind the Blue Wall of Silence, even where the officer becomes a convicted murderer.

54. Minneapolis Police Department officers have been instructed by the Minneapolis Police Federation to not aid in investigations into other officers.

55. The supervisory defendants and policymakers at the CITY OF MINNEAPOLIS and the Minneapolis Police Department had actual knowledge of the constitutionally lacking reporting and lack of adherence to Minneapolis Police Department policies among officers or were deliberately indifferent to the need for proper reporting by turning a blind eye.

56. Not only are Minneapolis Police Department officers routinely not disciplined when they fail to truthfully report the unauthorized use of deadly force or fail to cooperate with investigations into fellow officers, the Minneapolis Police Federation is actively encouraging them to do so.

57. Some combination of the failure to report, the failure to report truthfully, the Blue Wall of Silence, and the failure to cooperate in investigations has occurred here.

58. Defendants JOHN DOES 2-6 actively encouraged defendant JOHN DOE 1's use of excessive force by colluding with defendant JOHN DOE 1 and one another to eschew report writing and supervisor notification, or to fail to report truthfully.

59. Defendants JOHN DOES 1-6 used the absence of report writing and supervisor notification or the absence of truthful report writing to frustrate LALIBERTE's assertion of his civil rights.

60. Defendants JOHN DOES 7-8, the CITY OF MINNEAPOLIS, and MEDARIA ARRADONDO have acquiesced in said collusion by failing to require adherence to policies regarding report writing, supervisor notification, and policy-violation notifications.

61. Defendants JOHN DOES 7-8, the CITY OF MINNEAPOLIS, and MEDARIA ARRADONDO have acquiesced in the unauthorized use of deadly force by defendant JOHN DOE 1 going unpunished by failing to require adherence to policies regarding report writing, supervisor notification and policy-violation notifications.

62. The supervisory Defendants were causally and directly involved in the violation of LALIBERTE's constitutional rights.

63. As a result of the department-wide reporting and cover-up methods, LALIBERTE has been unable to identify the shooter by name.

## COUNT I
## 42 U.S.C. § 1983—FOURTH AND FOURTEENTH AMENDMENT VIOLATIONS

64. LALIBERTE realleges and incorporates by reference each and every allegation contained in each paragraph above as though fully set forth herein.

65. Through the above-described actions, defendant JOHN DOE 1, under color of state law, violated and deprived LALIBERTE of his clearly established and well-settled civil rights to be free from excessive force under the Fourth and Fourteenth Amendments to the United States Constitution.

66. Defendant JOHN DOE 1 subjected LALIBERTE to these deprivations of his rights either maliciously or by acting with reckless disregard for whether his rights would be violated.

67. As a direct and proximate result of the acts and omissions of defendant JOHN DOE 1, LALIBERTE suffered injuries, was forced to endure great pain and mental suffering, and was damaged in an amount exceeding $2,000,000.

68. Punitive damages in an amount exceeding $2,000,000 are available against defendant JOHN DOE 1 and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minnesota Statute § 549.20.

69. LALIBERTE is entitled to recover his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT II
## 42 U.S.C. § 1983—FOURTH AND FOURTEENTH AMENDMENT VIOLATIONS

70. LALIBERTE realleges and incorporates by reference each and every allegation contained in each paragraph above as though fully set forth herein.

71. LALIBERTE engaged in constitutionally protected acts of speech and assembly in the form of peaceful protest. He did so in a public place before curfew and at all times obeyed the requests by City leaders.

72. Defendants JOHN DOES 1-6, under color of state law, retaliated against LALIBERTE for engaging in a constitutionally protected activity.

73. LALIBERTE's First and Fourteenth Amendment rights were violated when he was deliberately targeted and shot during the course of peaceful protest.

74. The conduct of defendants JOHN DOES 1-6 tends to chill citizens from continuing to engage in constitutionally protected activities.

75. As a direct and proximate result of the unconstitutional acts of defendants JOHN DOES 1-6, LALIBERTE suffered damages in an amount exceeding $2,000,000.

76. Punitive damages in an amount exceeding $2,000,000 are available against defendants JOHN DOES 1-6 and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minnesota Statute § 549.20.

77. LALIBERTE is entitled to recover his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT III
## 42 U.S.C. § 1983—CONSPIRACY TO INTERFERE WITH THE ASSERTION OF LALIBERTE'S RIGHTS UNDER THE CONSTITUTION AND 42 U.S.C. § 1983

78.     LALIBERTE realleges and incorporates by reference each and every allegation contained in each paragraph above as though fully set forth herein.

79.     Defendants JOHN DOES 1-6 agreed either to improperly report, or not report at all, the incident regarding LALIBERTE.

80.     Defendants JOHN DOES 1-6 improperly reported, or did not report at all, the incident regarding LALIBERTE.

81.     Defendants JOHN DOES 1-6 did so in concert and with the intent to shield defendant JOHN DOE 1 and thereby prevent the assertion of LALIBERTE's civil rights.

82.     Defendants JOHN DOES 1-6, under color of state law, committed the above misconduct maliciously or with reckless disregard for whether LALIBERTE's rights would be violated.

83.     As a direct and proximate result of the actions described above, which are tantamount to obstruction of justice, defendants JOHN DOES 1-6 have conspired to interfere with and interfered with the assertion of LALIBERTE's civil rights, and LALIBERTE was thereby damaged in an amount exceeding $2,000,000.

84.     Punitive damages in an amount exceeding $2,000,000 are available against defendants JOHN DOES 1-6 and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minnesota Statute § 549.20.

85.     LALIBERTE is entitled to recover his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT IV
## SUPERVISORY LIABILITY

86. LALIBERTE realleges and incorporates by reference each and every allegation contained in each paragraph above as though fully set forth herein.

87. Defendants JOHN DOES 7-8 and MEDARIA ARRADONDO at all times material hereto were members of the Minneapolis Police Department with supervisory responsibilities over defendants JOHN DOES 1-6.

88. These supervisory Defendants at the CITY OF MINNEAPOLIS had actual knowledge of the constitutionally lacking force reporting in widespread use among officers.

89. As such, rank and file, such as defendants JOHN DOES 1-6 with regard to LALIBERTE, freely and fragrantly violated citizens' constitutional rights using department-wide reporting methods to cover it up.

90. The supervisory Defendants had actual knowledge of the improper reporting by defendants JOHN DOES 1-6 regarding the LALIBERTE incident and other similar incidents, further evidencing a policy or custom of constitutional misconduct.

91. These supervisory Defendants, under color of state law, acted with deliberate indifference to, authorized, or acquiesced in the violation of LALIBERTE's constitutional rights by defendants JOHN DOES 1-6.

92. As a direct and proximate result of the acts and omissions of defendants JOHN DOES 7-8 and MEDARIA ARRADONDO, LALIBERTE suffered injuries, was forced to endure great pain and mental suffering, and was damaged in an amount exceeding $2,000,000.

93. Punitive damages in an amount exceeding $2,000,000 are available against defendants JOHN DOES 7-8 and MEDARIA ARRADONDO and are hereby claimed as a matter

of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minnesota Statute § 549.20.

94. LALIBERTE is entitled to recover his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT V
## CIVIL RIGHTS VIOLATIONS—*MONELL V. DEP'T OF SOCIAL SERVICES*

95. LALIBERTE realleges and incorporates by reference each and every allegation contained in each paragraph above as though fully set forth herein.

96. Before May 27, 2020, the CITY OF MINNEAPOLIS, with deliberate indifference to the rights of citizens, initiated, tolerated, permitted, failed to correct, promoted, and/or ratified a custom, pattern, or practice on the part of its officers, including the Defendants herein, of the improper use of force, including deadly force.

97. Through policymakers defendants JOHN DOES 7-8 and MADERIA ARRADONDO, and with the department's ratification and approval, by failing to discipline all officers consistently on this point, there has been an approval of a deficient policy, custom, or practice of the improper use of force, including deadly force.

98. LALIBERTE's injuries were directly and proximately caused by the acts and omissions above and by the CITY's customs, patterns, and/or practices and the CITY OF MINNEAPOLIS is thereby liable in an amount exceeding $2,000,000.

99. LALIBERTE is entitled to recover his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. That this Court find that Defendants committed acts and omissions violating the First, Fourth, and Fourteenth Amendments to the United States Constitution, actionable under 42 U.S.C. § 1983;

2. As to Count 1, a money judgment against defendant JOHN DOE 1 for compensatory damages and punitive damages in an amount in excess of $2,000,000.00, together with costs, including reasonable attorneys' fees under 42 U.S.C. § 1989 and prejudgment interest;

3. As to Count II, a money judgment against defendants JOHN DOES 1 through 6 for compensatory damages and punitive damages in an amount in excess of $2,000,000.00, together with costs, including reasonable attorneys' fees under 42 U.S.C. § 1989 and prejudgment interest;

4. As to Count III, a money judgment against defendants JOHN DOES 1 through 6 for compensatory damages and punitive damages in an amount in excess of $2,000,000.00, together with costs, including reasonable attorneys' fees under 42 U.S.C. § 1989 and prejudgment interest;

5. As to Count IV, a monetary judgment against defendants JOHN DOES 7 and 8 and Minneapolis Police Department Chief MEDARIA ARRADONDO for compensatory damages and punitive damages in an amount in excess of $2,000,000.00, together with costs, including reasonable attorneys' fees under 42 U.S.C. § 1989 and prejudgment interest;

6. As to Count V, a money judgment against defendant CITY OF MINNEAPOLIS, for compensatory damages and punitive damages in an amount in excess of $2,000,000.00, together with costs, including reasonable attorneys' fees under 42 U.S.C. § 1989 and prejudgment interest;

7. For an order mandating changes in the policies and procedures of the Minneapolis Police Department requiring, among other things, policy and training measures on the proper use

of "non-lethal weapons," the proper reporting of use of force, adherence to policies to ensure identities of officer shooters and witnesses are not shielded from victims, and relations and policing with those exercising First Amendment rights; and,

8. For such other and further relief as this Court deems just and equitable.

Dated: May 19, 2022.                                         TC INJURY LAW

                                               */s/ Aaron M. Ponce*
Aaron M. Ponce (#0296405)
10 South 5th Street, Suite 1010
Minneapolis, MN 55402
Telephone: 612-344-4848
*aponce@tcinjurylaw.com*

ATTORNEYS FOR PLAINTIFF DAVID LALIBERTE